**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**Petition of AMERICAN INVESTORS COMPANY NO. 5.**

**No. 70–347.**

United States District Court,
E. D. Pennsylvania.

July 16, 1976.

Edwin P. Rome, Blank, Rome, Klaus & Comisky, Norman L. Holmes, Philadelphia, Pa., for Penn Cent. Transp. Co.

Howard Gittis, Wolf, Block, Schorr & Sol-is-Cohen, Bernard Chanin, Philadelphia, Pa., for petitioners.

## MEMORANDUM AND ORDER NO. 2456

FULLAM, District Judge.

The petitioners, Joseph H. Rosenbaum, Francis N. Rosenbaum, William M. Goldstein, and MDC Corporation, are general partners trading as American Investors Company No. 5 (AIC No. 5). AIC No. 5 purchased approximately 1500 rail cars from Penn Central and, with the aid of outside financing, caused the cars to be rebuilt. On completion of the reconstruction the cars were leased back to Penn Central under a lease dated May 19, 1969. The lease was one of many equipment financing arrangements affirmed by the Trustees in August of 1970. Rental payments were made through August of 1973. AIC No. 5 contends that effective May 1973 the rent was validly increased to cover increased debt service costs incurred when the original reconstruction loan was refinanced. After the Trustees ceased making payments in August of 1973, AIC No. 5 declared a default and now claims accelerated rentals plus certain interest items totaling $17.25 million (alternatively, $7.05 million, the accelerated balance less the outstanding debt on the equipment).

In addition to making various denials and asserting certain affirmative defenses, the Trustees filed a three-count counterclaim. In Count I, the Trustees allege that AIC No. 5, its partners, and two officers of the Debtor, Messrs. David Bevan and William Gerstnecker, individually and in concert, withheld and misrepresented facts pertinent to Penn Central's decision to enter into the lease. The Trustees seek rescission of the lease, an accounting for profits, and compensatory and punitive damages.

Count II alleges that in September of 1969, Joseph and Francis Rosenbaum, and Messrs. Bevan and Gerstnecker, individually and in concert, caused $10 million borrowed by a subsidiary of the Debtor to be transferred in trust for the Debtor to a Lichtenstein business trust controlled by the Rosenbaums. Thereafter, approximately $4 million of the fund held by the trust was illegally converted by transferring it to a foreign business entity controlled by one Fidel Goetz.

In Count III, the same defendants and another partnership entity, American Investors Company, which is controlled by the Rosenbaums, are named. This count alleges that the defendants, acting individually and in concert, caused Penn Central improperly to transfer $2.115 million to the Rosenbaums between May of 1968 and August of 1969, in a number of separate "security deposit transactions;" and that, although the funds were eventually returned, no interest was ever paid thereon. Paragraphs 53 and 54 of Count III allege that the deposit transfers and the AIC No. 5 lease transaction were part of an illegal conspiracy to secure for the defendants personal gain and unjust enrichment at the expense of the Debtor. Compensatory and punitive damages are sought in each count.

■ Now before the Court are a host of motions by the counter-defendants contesting the validity of this Court's summary jurisdiction over the counterclaims.[1]

A. *Motions of the Partners as Individuals to Dismiss*

■ When AIC No. 5 filed its petition, it subjected itself to the summary jurisdiction of this Court. Since Count I arose out of the same transaction and occurrence, this Court has summary jurisdiction over the Trustees' counterclaim against AIC No. 5. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *In re Penn Central Trans. Co. (UDC),* 468 F.2d 1222 (3d Cir. 1972); *In re Carnall Const. Corp.,* 424

---

1. Counsel's reliance on the Rules of Bankruptcy Procedure is misplaced. These rules apply only to straight bankruptcy cases under Chapters I–VII of the Bankruptcy Act. The Supreme Court has recently promulgated rules applicable to § 77 or Chapter VII cases, but the § 77 rules are not yet effective. Thus, General Order No. 49 is still controlling, and under that Order the Federal Rules of Civil Procedure apply in § 77 cases.

F.2d 296 (3d Cir. 1970). The partners contend, however, that even though the petition is brought by them individually trading as AIC No. 5, they have not in any way consented to the summary jurisdiction of this Court. This contention is incorrect.

■ Under Rule 17(b) of the Federal Rules of Civil Procedure, Pennsylvania law is applicable to determine the capacity of a partnership to sue or be sued. In conformity with Rule 2127 of the Pennsylvania Rules of Civil Procedure, the present petition is by the partners trading as AIC No. 5, and Count I of the Trustees' counterclaim is in conformity with Rule 2128 which permits an action against a partnership to be prosecuted against one or more of the partners as individuals trading as a partnership. The purpose of the Pennsylvania requirement that the partners be named as individual plaintiffs is to insure that a counterclaim may be enforced against the partner's individual property. *See* Note of the Procedural Rules Committee to Rule 2127; *Morrison's Estate*, 343 Pa. 157, 22 A.2d 729 (1941); *McConnell & Breiden v. Lee Templeton Motors*, 68 Mont.Cty.L.R. 215 (1952).

It is obvious, of course, that Rule 17(b) has very limited effect in this context. Capacity to sue is not at issue. AIC No. 5's amended petition conforms to Rule 2127, and under the law of the partners' domiciles they are subject to suit. Rather, there are two interrelated issues: (1) under federal procedural law are persons who file a petition as partners trading as a partnership "parties," and (2) are such individuals "opposing parties" for the purpose of Rule 13(a) of the Federal Rules of Civil Procedure?

■ With respect to Count I, these questions are answered without difficulty, since the allegations of Count I are fairly read as alleging that the individual conduct of the partners was in pursuance of the partnership business relating to the subject lease. Under the Pennsylvania cases previously cited and relied on by the partners, it is clear that individual partners subject themselves to personal liability for counterclaims arising out of the same transaction or occurrence as the partnership's complaint or action.

■ Federal procedural law does not provide for limited appearances as plaintiffs. The partners are parties to the petition and opposing parties under Rule 13(a), and as such have subjected themselves to compulsory counterclaims. Therefore, in terms of the summary jurisdiction of a § 77 reorganization court, the prosecution of the present petition by partners as individuals constitutes the partners' consent to summary jurisdiction.[2] *In re Penn Central Transp. Co. (UDC)*, 468 F.2d 1222 (3d Cir. 1972); *In re Carnell Const. Corp.*, 424 F.2d 296 (3d Cir. 1970).

■ An equally sound analysis is predicated on the reasoning of *Katchen v. Landy, supra*. Essentially the same conduct as is alleged in Count I is the basis of the Trustees' affirmative defense to the petition. Thus, this Court will have to determine the Count I factual issues as part of the hearing on the petition. Even if only the partnership were a party, the partners would be bound in the partnership action. 1B Moore's *Federal Practice*, ¶ 4.111[3] n. 12. *Katchen v. Landy* suggests that in such a situation the court may decide the issues relating to the defense and also enter appropriate affirmative judgments. Addressing the contention that a bankruptcy court could summarily deny a claim if the claimant had received a preference, but could not enter a judgment for return of the preference, the Supreme Court observed:

"But once it is established that the issue of preference may be summarily adjudicated absent affirmative demand for surrender of the preference, it can hardly be doubted that there is summary jurisdiction to order the return of the preference . . . Thus, once a bankruptcy court has dealt with the prefer-

---

2. It is not necessary to determine whether the same result should follow if state law permitted a partnership to sue without the general partners being named, or if the partnership simply filed a claim, as distinct from the prosecution of the present petition.

ence issue, nothing remains for adjudication in the plenary action . . . To require a trustee to commence a plenary action in such circumstances would be a meaningless gesture, and it is well within the equitable powers of the bankruptcy court to order return of the preference during summary proceedings on allowance or disallowance of claims." 382 U.S. at 333–35, 86 S.Ct. at 475.

The equitable nature of a bankruptcy court's power suggests that even if state law were to permit a partnership to proceed in its own name, the partners should be subject to the summary jurisdiction of the bankruptcy court to determine counterclaims involving conduct of the partners in pursuance of the partnership business which is the subject matter of the partnership's claim. Of course, here this conclusion is further supported by the fact that Pennsylvania law requires the partners to proceed as individuals trading as a partnership.

Francis and Joseph Rosenbaum, the only partners of AIC No. 5 named in Counts II and III, press basically the same arguments in support of dismissal of these counts as with respect to Count I. Two issues not considered in connection with Count I must be resolved: (1) Do Counts II and III arise out of the same transaction or occurrence as the petition and thus constitute compulsory counterclaims; and (2) does the fact that the conduct alleged in Counts II and III was not in pursuance of AIC No. 5's business preclude a finding of consent to summary jurisdiction?

■ The latter issue will be discussed first. Assuming Counts II and III arise out of the same transaction or occurrence, it is necessary again to focus on the implications of Rule 17(b) of the Federal Rules of Civil Procedure. Pennsylvania applies a mutuality doctrine in determining what counterclaims may be brought against partners suing as a partnership. The theory is that since the original action is a partnership action, it is necessary for partners to be individually liable for judgments on counterclaims, but the partners are not subject to counterclaims for conduct not within the scope of the partnership relationship. Mutuality is thus a limiting principle. Here the Rosenbaums argue that since the allegations of Counts II and III do not relate to actions allegedly taken in pursuance of AIC No. 5's partnership activities, it follows that they are not subject to this Court's jurisdiction. If Pennsylvania law controls, this contention is correct.

■ As previously noted, Rule 17(b) relates only to the capacity to sue, not the effect of bringing a suit. Since the Rosenbaums are parties to the original petition and have capacity to sue, Rule 17(b) is not relevant to their presentations. Federal law controls. *Scott v. U. S.,* 354 F.2d 292, 173 Ct.Cl. 650 (1965). Clearly, if the Rosenbaums had sought relief as individuals concerning an equipment lease, they would be subject to this Court's summary jurisdiction to adjudicate claims of the Trustees arising out of the same transaction or occurrence.

*Zion v. Sentry Safety Control Corp.,* 258 F.2d 31 (3d Cir. 1958), is not to the contrary. There, the plaintiff, Sentry, sued a lawyer for breach of his fiduciary duty as one of its directors and counsel. After the time for filing a compulsory counterclaim had expired, the defendant, Zion, and his law partners brought an action as partners trading as a partnership for legal fees due from Sentry. The court rejected Sentry's contention that the partnership's claim was barred by the compulsory counterclaim rule. The theory was that Sentry sued Zion in his individual capacity, and that, since under Pennsylvania law only the partnership could bring the partnership claim, there was no claim which Zion had failed to plead. The present case is in just the opposite procedural posture. The partnership is properly asserting its claims and the issue is whether the individuals are subject to counterclaims predicated on activity not in pursuance of the partnership business. In *Zion,* the Third Circuit concluded that Zion as an individual did not have a cause of action, and, therefore, there was no obligation to file a counterclaim. In the present case, there is no issue concerning the existence of a substantive cause of action on the

part of the partners, the partnership, or the Trustees. It must be acknowledged, however, that some of the *dicta* in *Zion* appears to be inconsistent with the holding in *Scott*. I am satisfied that *Zion* is properly distinguishable and that *Scott* represents the proper analysis.

■■■ Moreover, there are certain basic differences between Pennsylvania and federal procedure which must be noted. Under the Pennsylvania Rules of Civil Procedure, plaintiffs may only join claims arising out of the same transaction or occurrence or unrelated contract claims (Rules 1020 and 1024); no counterclaims are compulsory, and the only counterclaims which are permitted are those which arise out of the same transaction or occurrence or other unrelated contracts (Rule 1031). On the other hand, the Federal Rules of Civil Procedure are premised on the fundamental concept of liberal joinder. Plaintiffs may join all claims against a defendant; counterclaims arising out of the same transaction or occurrence are compulsory, and all other counterclaims are permissive. Nothing in Rule 17 requires the wholesale renunciation of the fundamental policy of the Federal Rules in deference to Pennsylvania's procedural rules. Thus, if Counts II and III arise out of the same transaction or occurrence as the original petition, the individual partners are subject to the summary jurisdiction of this Court, even though their alleged activity was not in pursuance of AIC No. 5's business.

■■■ It is well-established that the words "transaction or occurrence" in Rule 13(a) are not to be interpreted literally. Rather, these words are given meaning by the liberal joinder policy underlying the Federal Rules. *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631 (3d Cir. 1961), is the controlling authority in the Third Circuit:

"We have indicated that a counterclaim is compulsory if it bears a 'logical relationship' to an opposing party's claim. The phrase 'logical relationship' is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time of the parties and courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action." 286 F.2d at 634 (citations omitted).

Application of the logical relationship standard to all but the easiest cases is not a simple task.

■■■ The Trustees place heavy reliance on their conspiracy allegations. Yet, it is apparent that if there is otherwise no logical relationship between a counterclaim and the subject matter of the original action, the allegation that the conduct has its genesis in a conspiracy does not automatically lead to the conclusion that there is a logical relationship. Of course, the conspiracy allegation is a relevant factor in determining whether there is a logical relationship. In the present case, there is a close temporal relationship between the May 1969 lease transaction and the facts alleged in Counts II and III. In addition, there was apparently an ongoing business relationship between the Rosenbaums and the Debtor through two of its senior officers. The three counts present one picture rather than three.

■■■ The difficulty, if any, lies in the fact that the lease transaction came in the middle of the security deposit transaction set forth in Count III and before the Goetz transaction alleged in Count II. An overly literal reading of "transaction or occurrence" might lead to the conclusion that three separate transactions or occurrences are involved, but I believe the logical relationship test clearly implies that events separate in time may well be logically related under *Great Lakes*. In sum, I conclude that Counts II and III are logically related to

the original petition. Therefore, the Rosenbaums' motion to dismiss Counts II and III will be denied.

### B. Motions of Messrs. Bevan and Gerstnecker and American Investors Company to Dismiss

■ Ordinarily, a trustee's action against corporate officers or third parties for alleged fraudulent activity prior to the initiation of a reorganization proceeding is not subject to the reorganization court's summary jurisdiction because the controversy does not involve a claim to the debtor's property or a matter arising in the administration of the debtor's estate. Of course, a person may consent to the reorganization court's summary jurisdiction. In this case, Messrs. Bevan and Gerstnecker and American Investors Company (a different entity than AIC No. 5), have asserted timely objections to this Court's summary jurisdiction.

■ The Trustees, however, argue that since Bevan and Gerstnecker are properly joined under Rule 13(b) to the Federal Rules of Civil Procedure, this Court has summary jurisdiction over these two counter-defendants. This theory is predicated on the generally-accepted principle of ancillary jurisdiction. In civil actions, once a court has jurisdiction over a plaintiff's claim against a defendant, the Court acquires jurisdiction over the entire case. The concept of a case in this context is understood to mean all claims arising out of the transactions or occurrences which are the subject matter of the original claim. If a defendant's counterclaim names additional parties as counter-defendants, it is generally agreed that there is ancillary jurisdiction over the claims against the additional defendants. 3 Moore *Federal Practice,* ¶ 13.15; 6 Wright & Miller, *Federal Practice and Procedure,* § 1436.

■ The Trustees' argument has facial validity. There is summary jurisdiction over Count I of the counterclaim against AIC No. 5 and its partners, and both Messrs. Bevan and Gerstnecker are properly joined under Rule 13(b). Moreover, the policy consideration of efficient judicial administration that underlies the concept of ancillary jurisdiction is fully applicable in the bankruptcy context. Yet, the concept of ancillary jurisdiction cannot be properly applied to the facts before this Court. In civil cases, the Congressional grants of jurisdiction have been interpreted as conferring upon the Court jurisdiction over the entire case. However, in the bankruptcy context, consent is implied in law from the filing of a claim or otherwise proceeding before the bankruptcy court. Acceptance of the Trustees' theory would mean that AIC No. 5 and its partners have, in effect, by their consent submitted Bevan and Gerstnecker to this Court's summary jurisdiction. Clearly, the Court cannot sanction such an extension of consent principles. In sum, the analogy to ancillary jurisdiction is close to the mark, but it is not adequate.

The above ruling on Count I is applicable with respect to Counts II and III and, therefore, Bevan and Gerstnecker's motions to dismiss will be granted. For the same reasons, the motion of American Investors Company to dismiss will also be granted.

■ A few additional observations concerning the claims against Bevan and Gerstnecker are appropriate. A fundamental aspect of the § 77 reorganization process, and indeed under Chapter X of the Bankruptcy Act, is the investigation of the Debtor's operations prior to the filing of its petition. When a basis for prosecution of actions against past officers of a debtor exists, trustees are obligated vigorously to prosecute such actions. Although the present ruling represents a setback to the discharge of the Trustees' fiduciary obligations under the Act, the Trustees remain obligated to pursue those causes of action which they conclude exist against the past officers. To the extent multiple litigation is involved, those costs must be incurred to preserve the integrity of the reorganization process.

■ It is worth noting in this connection that a potential aspect of the disposition of the present motions was an analysis

of whether plenary jurisdiction existed in this Court to hear the Trustees' counterclaims. Although the parties have not elaborated on this theory, the reasoning of the Supreme Court in *Williams v. Austrian*, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947), and particularly Justice Frankfurter's dissenting opinion, supports the conclusion that a § 77 reorganization court presiding over a debtor's reorganization has plenary jurisdiction over a trustee's claims against past officers for fraud and mismanagement. Such plenary jurisdiction is not dependent on 28 U.S.C. §§ 1331 or 1332, but has its source in the conferral on § 77 reorganization courts of the jurisdiction of an equity receivership court. If plenary jurisdiction of these parties can be obtained promptly, perhaps all aspects of this litigation can be tried in one proceeding.

C. *Motion to Sever Count I from Counts II and III*

At this juncture, AIC No. 5's motion to sever will be denied. Discovery will go forward with respect to all three counts, and if it later appears that it would be more efficient to structure the hearing schedule to focus on counts separately, an appropriate order will be entered.

ORDER NO. 2456

AND NOW, this 16th day of July, 1976, it is ORDERED that:

1. The motions of the respective partners of AIC No. 5 to dismiss Counts I, II and III of the Trustees' counterclaim are DENIED.

2. The motions of Messrs. Bevan and Gerstnecker to dismiss Counts I, II and III of the Trustees' counterclaim are GRANTED, and the motion of American Investors Company to dismiss Count III of the Trustees' counterclaim is also GRANTED.

3. The motion of AIC No. 5 to sever Count I from Counts II and III is DENIED.