Florhline A. PAINTER, Plaintiff,

v.

Larry R. HARVEY, et al., Defendants.

Civ. A. No. 85–0029–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Nov. 5, 1987.

William H. Ralston, Jr., Harrisonburg, Va., Deborah C. Wyatt, Charlottesville, Va., for plaintiff.

David A. Penrod, Lawrence H. Hoover, Harrisonburg, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983, alleging that the defendant violated her constitutional rights through the use of excessive force during an arrest for driving under the influence in November, 1984. Defendant counterclaimed, asserting that the plaintiff slandered and libeled him by filing a fabricated written complaint about the circumstances of her arrest with the Town Council of Luray, Virginia, and by distributing her complaint to the local news media, knowing that the information would be published and distributed to the general public. A jury trial in this action commenced on March 16, 1987, and on March 18, 1987, the jury rendered two verdicts. It found for the defendant on the plaintiff's 42 U.S.C. § 1983 action. On the defendant's counterclaim for slander and libel, the jury found for the defendant, fixed his compensatory damages at $5,000, and awarded punitive damages of $15,000. This matter is presently before the court on the plaintiff's motion to dismiss the defendant's counter-

claim for lack of subject-matter jurisdiction. While such a motion should more properly have been advanced at an early stage of the proceedings, the motion is nonetheless proper even at this late stage, because the absence of subject-matter jurisdiction can be raised at any time by either party or by the court. *See Capron v. Van Noorden*, 6 U.S. (2 Cr.) 126, 2 L.Ed. 229 (1804); Rule 12(b) and (h), Fed.R.Civ.P.

*Statement of Facts*

The genesis of this case centers on the conduct of the parties in the early morning hours of November 9, 1984. At trial there was a great deal of evidentiary conflict concerning what actually happened on that eventful morning. That evidence indicates that Officer Harvey and Officer Getz, both of the Luray Police Department, were on a routine police patrol, when at approximately 12:45 a.m., they stopped a vehicle driven by the plaintiff Painter, accompanied by a male passenger. Harvey testified that Mrs. Painter appeared intoxicated, that she refused his repeated requests to get out of her car, and that she was wholly uncooperative with the officers' attempts to calm her down. Mrs. Painter's passenger was also uncooperative. He became abusive to the two officers, so that they arrested him.

Wary that the situation might get out of control, Harvey called for additional police back-up. In response, Deputy Jerry Baker and Investigator Ralph Fleaharty, both also with the Luray Police Department, arrived on the scene. After their arrival, Officer Harvey placed Painter under arrest for suspicion of driving while intoxicated, handcuffed her, and with the help of another officer placed her in the back seat of his patrol car behind a protective screen which separated the front and back seats.

The officers present at the scene testified that when placed into the back seat of Officer Harvey's patrol car, Painter showed no signs of physical abuse. She was dressed neatly and properly. Officer Harvey drove Painter from the scene of the arrest to the Page County Jail. The other officers either immediately led or immediately followed the police vehicle driven by Officer Harvey. Officer Harvey testified that when he arrived at the jail, he noticed that Painter had opened her blouse, removed one of her breasts from her bra and left it exposed, and had removed her shoes, her pantyhose, and her underpants.

Harvey requested the assistance of his fellow police officers in removing Painter from the rear of his vehicle. While Painter was being removed from the cruiser and taken into the jail, she repeatedly accused Officer Harvey of assaulting her. While being processed at the jail, Painter refused a request to restore her breast back into her bra and to cover her vaginal area. She continued to claim that Officer Harvey was responsible for her condition.

On April 9, 1985, Painter filed a written complaint with the Town Council of Luray summarizing her version of the events. In it she alleged that Harvey had "jerked me out of the car, tore my blouse, put marks on my breast, and I also sustained a head and neck injury from his excessive force he used ...." Painter gave a copy of this written complaint to a reporter for the local newspaper, the *Page News and Courier*. Excerpts from the complaint were published in the *Page News and Courier* on April 12, 1985.

Testimony from Jerry Shiro, the former chief of police of the Luray Police Department, demonstrated that the *Page Courier Journal* article created a number of problems for Officer Harvey. According to Shiro, the plaintiff's accusations called into question the defendant's credibility and trustworthiness, and his fitness as a police officer. Shiro also testified that some Luray police officers, after reading the article and blindly accepting Painter's version as true, made negative comments to him about Harvey's role in the incident. Others made remarks directly to Harvey critical of his conduct. The police department likewise received a number of citizen comments and complaints about the alleged incident. In addition, Painter's accusations caused members of the town's council to question Shiro about Harvey's fitness as a police officer. Mrs. Painter's complaint was placed in Harvey's personnel record.

At the close of the evidence, the jury was faced with the task of choosing between two wholly contradictory accounts of the circumstances surrounding Mrs. Painter's arrest. They chose to credit the testimony of Officer Harvey and his witnesses over the testimony adduced for Painter. As noted, the jury rendered a verdict for the defendant against Mrs. Painter on her 42 U.S.C. § 1983 claim and further found for Harvey on his counterclaim for libel and slander, awarding him $5,000 in compensatory damages and $15,000 in punitive damages. After the trial, Painter moved to dismiss Harvey's counterclaim, asserting that this court lacked subject-matter jurisdiction to hear it.

*Plaintiff's Motion To Dismiss Defendant's Counterclaim For Lack of Subject-Matter Jurisdiction*

Counterclaims in the federal courts are governed by Rule 13, Federal Rules of Civil Procedure. Fed.R.Civ.P. 13(a) requires the assertion of a compulsory counterclaim against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. On the other hand, Fed.R.Civ.P. 13(b), under proper facts, permits the filing of a permissive counterclaim against an opposing party, though it does not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim. Rule 13, Fed.R.Civ.P.

The matter before this court is simple—the determination of whether Harvey's counterclaim is compulsory or permissive. If the counterclaim is compulsory under Fed.R.Civ.P. 13(a), it is within the court's ancillary jurisdiction to entertain it and no independent basis of federal jurisdiction is required. *Sue & Sam Manf. Co. v. B–L–S Construction Co.*, 538 F.2d 1048, 1051 (4th Cir.1976). Conversely, if the counterclaim is permissive, Painter's motion must be sustained because there is an absence of an independent jurisdictional predicate. *Sue & Sam*, 538 F.2d at 1051; *See Reeves v. American Broadcasting Companies*, 580 F.Supp. 84 (S.D.N.Y.1983).

In the instant action, both Mrs. Painter and Officer Harvey are citizens of Virginia. Accordingly, there is no diversity of citizenship, nor does Harvey assert a federal question. 28 U.S.C. § 1331, 1332. Thus, whether this court's subject-matter jurisdiction has been invoked by Harvey's counterclaim turns upon whether it is compulsory: whether it arose "out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a).

The term "transaction or occurrence" is an inexact term and has never been fully crystallized in law. Some guidance is afforded, however, by the Fourth Circuit's opinion in *Sue & Sam, supra.* In attempting to define the parameters of the term "same transaction or occurrence" the Fourth Circuit stated,

> We keep in mind that the Court in *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), defined transaction, under former Equity Rule 30 but as used in the same context found here, as a word of flexible meaning which may comprehend a series of many occurrences depending not so much on the immediateness of their connection as upon their logical relation.

538 F.2d at 1051.

Further, the *Sue & Sam* court emphasized that *Moore* stood for the proposition that the facts that constitute the claim and counterclaim need not be precisely identical in order for the trial court to find that the two claims arose out of the same transaction, for it was obvious in *Moore* that the counterclaim embraced additional allegations not contained in the complaint. Yet the *Moore* court reached the conclusion that the counterclaim was compulsory because of the *Moore* court's belief that the rule should be given a liberal interpretation to avoid a multiplicity of suits. *Sue & Sam*, 538 F.2d at 1051.

Thus, recognizing the imprecision of the phrase, the *Sue & Sam* court set out four questions the trial court must consider in determining whether a cause of action arises "out of the same transaction or occurrence." Those questions, as applied

here, are paraphrased as follows: (1) Are issues of fact and law raised by the claim of Mrs. Painter and the counterclaim of Harvey largely the same? (2) Would *res judicata* bar a subsequent suit on Harvey's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute Mrs. Painter's claim as well as Harvey's counterclaim? (4) Is there any logical relationship between Mrs. Painter's claim and Harvey's counterclaim?

This court gleans from *Sue & Sam* the Fourth Circuit's reluctance to be wed to the single question analyses utilized in other circuits, though the Court of Appeals did not specifically reject the reasoning of any one of these circuits. Accordingly, *Sue & Sam* thus requires a trial court to answer each of the questions after a fact-specific analysis, and if there is an affirmative answer to one or more of the questions, the court may conclude that the counterclaim is compulsory. All the while, the court must keep its focus on the broader picture, namely, on the purpose of Rule 13(a), to provide complete relief to the parties, to conserve judicial resources, and to avoid proliferation of cases. *Moore v. New York Cotton Exchange, supra; Matter of Penn Central,* 419 F.Supp. 1376 (E.D.Pa.1976).

Thus, the court turns to the *Sue & Sam* inquiry:

(1) Are issues of fact and law raised by the claim of Mrs. Painter and the counterclaim of Officer Harvey largely the same?

The central issue in both the claim and counterclaim is identical: What transpired during Mrs. Painter's arrest on November 9, 1984? The jury, in essence, was faced with irreconcilably conflicting evidence and was required to choose which version to accept or reject. By choosing, the jury inescapably had to come to a conclusion about the events of that night, thus determining whether Mrs. Painter's claim of excessive force was valid, or whether Harvey's claim that no excessive force was used and that the appearance of the plaintiff at the police station was not of his doing, thus supporting his counterclaim.

In resolving this conflict, it is certain that the facts underlying the claim and counterclaim were inextricably linked to one another. In considering whether the issues of law and fact are largely the same, it must be remembered that the fact pattern for the claim and counterclaim is entirely the same, save for the act of publication, in essence a part of the fact pattern underlying the counterclaim and not controverted by the plaintiff. *Sue & Sam* dictates that such an additional allegation contained in the counterclaim is of no consequence under the facts of this case.

The underlying legal issues are a different matter. Plaintiff's claim for excessive force involves constitutional questions under 42 U.S.C. § 1983. On the other hand, the legal issues surrounding the defendant's counterclaim involve questions of state law. The court cannot find an identity of legal issues with respect to the claim and counterclaim. Nevertheless, such a conclusion is not dispositive because the court must also consider the purpose of Rule 13(a). Indeed, in *Moore, supra,* neither the underlying facts nor the legal issues involved in the claim and counterclaim were identical, yet the Supreme Court held that the counterclaim was compulsory, stating: "To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim." *Moore's, supra* 270 U.S. at 610, 46 S.Ct. at 371.

Although the legal issues in Mrs. Painter's claim and Harvey's counterclaim are separate and distinct, the factual underpinnings are so intertwined as to be, in the main, identical. To require Harvey to withhold his counterclaim and bring it in the state courts would essentially require a retrial of the entire factual setting of the night of November 9, 1984. To do so would defeat the very purpose of Rule 13(a)—the avoidance of a multiplicity of suits.

(2) Would *res judicata* bar a subsequent suit on Officer Harvey's counter-

claim, absent the compulsory counterclaim rule?

The doctrine to which this question is addressed is that of claim preclusion. Under these facts, Officer Harvey's counterclaim for a cause of action under state law is sufficiently distinct that, had he chosen to sue separately in a state action for libel, he would not have been barred by *res judicata* from pursuing that claim. However, the *res judicata* test, like the other three, is simply a guideline in determining whether a counterclaim arises out of the same transaction or occurrence. It is no more an essential test than any other. Moreover, because it suffers from some inherent logical weaknesses, it is "too inadequate as an overall standard." Wright & Miller, *Federal Practice and Procedure*, § 1410.

This court must confess that it is somewhat mystified with the use of *res judicata* as a standard to determine whether a counterclaim is compulsory because, if *res judicata* is the standard, Rule 13(a) is superfluous. Wright & Miller have recognized this and have averred that, "the doctrine applied by most courts seems to be the converse. That is, absent the compulsory counterclaim rule, a pleader is never barred by *res judicata* from suing independently on a claim that he refrained from pleading as a counterclaim in a prior action." *Id.*, § 1410.

The fact that *res judicata* would not bar a subsequent state law claim by Harvey does not end the inquiry of whether Officer Harvey's counterclaim arose out of the same transaction or occurrence under these facts. Examining the facts here, one finds that jury verdict against Mrs. Painter on her § 1983 claim necessarily determined the issue of what happened during her arrest. Thus, in a subsequent state action she could well face an issue preclusion bar as to relitigating those facts. In that instance, the underlying purpose of the doctrine of issue preclusion and Rule 13 overlap, because the goal of both is to prevent just such a relitigation. Consequently, the fact that the court finds that the *res judicata* question can be answered in the negative as to Harvey's counterclaim does not

prevent a finding that Harvey's counterclaim arose out of the same transaction or occurrence.

(3) Will substantially the same evidence support or refute Mrs. Painter's claim as well as Officer Harvey's counterclaim?

Logically, this test is quite satisfactory in that it focuses the inquiry on the evidence presented by the claim and counterclaim, the relitigation of that evidence being the very result Rule 13(a) seeks to avoid. Hence, in analyzing the evidence presented, the court is necessarily forced to determine whether a denial of "compulsory" status to the counterclaim encourages a relitigation of identical evidence. As Wright & Miller state emphatically,

> It is hard to imagine a case where such an identity exists in which the counterclaim should not be held to be compulsory; indeed the purpose of compelling counterclaims, to prevent relitigation of the same set of facts, requires that the counterclaim be held compulsory where it does turn on the same evidence as plaintiff's claim.

*Id.*, § 1410.

Under the facts of this case, virtually the same evidence and facts support or refute both the claim and counterclaim. All of the witnesses, except the newspaper editor and witnesses testifying to damages, limited their testimony to a single factual issue—what transpired during Mrs. Painter's arrest on November 9, 1984? It is hard to imagine a case in which the evidence bearing on the two claims is so closely identical. Again, keeping in mind that the very purpose of making certain types of counterclaims compulsory is to prevent the relitigation of the same evidence, the virtual identity of the evidence in this case compels an affirmative response to this question.

(4) Is there any logical relationship between Mrs. Painter's claim and Officer Harvey's counterclaim?

Under the logical relation test, the court must, "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues

be resolved in one lawsuit.... Precise identity of issues and evidence is not required." *Harris v. Steinem,* 571 F.2d 119, 123 (2d Cir.1978).

The logical relation test is the most flexible of the four. It is the rare factual situation where a determination that a counterclaim is compulsory under one of the other three tests would not meet the criteria for this test. It is a tautology to say that the same evidence refutes or supports the claim and counterclaim and that there is a logical relation between those two claims. Because this court has found an affirmative answer to two of these questions set out above, it must find that the claim and counterclaim are logically related. Nevertheless, the court must still undertake the inquiry in light of the underlying facts. Those facts show that, in her complaint, Mrs. Painter asserted that the defendant used excessive force during her arrest in November, 1984. Harvey alleged in his counterclaim that the allegations Painter made about him and his conduct and delivered to the press in April 1985 were slanderous. Hence, the counterclaim and the allegations of the complaint arise out of the same operative facts, that is, the events of November 9, 1984. The final determination of Painter's claim necessarily resolves Harvey's counterclaim for defamation. Virtually the same evidence that was introduced to support Harvey's counterclaim refuted Painter's claim. In short, the truth of Officer Harvey's version of the events of November 9, 1984, is the central issue of fact in both the claim and counterclaim. They are inextricably and logically connected.

That finding comports with precedent from jurisdictions employing the logical relation test as the sole source for determining whether a counterclaim is compulsory. This court agrees with one leading case from such a jurisdiction which has held that "the similarity of facts in dispute when a counterclaim is based on a libelous publication contemporaneous with the transaction complained of in the original dispute is sufficient to meet the logical relation test." *Appletree v. City of Hartford,* 555 F.Supp. 224, 229 (D.Conn.1983).

*Conclusion*

Applying these tests to the underlying facts in this case, one finds that the answer to the majority of these questions with respect to Harvey's counterclaim is in the affirmative. The Fourth Circuit has held that an affirmative answer to the application of these questions means that the counterclaim is compulsory. *Sue & Sam,* 538 F.2d at 1053. Since the answer to the majority of these definitional questions is affirmative, and because the case law commands that Rule 13 should be liberally construed, *see Sue & Sam, supra; Matter of Penn Central, supra,* and further, because this court believes that the interests of judicial economy and fairness were served by having the complaint and counterclaim adjudicated in one lawsuit, this court finds that defendant Harvey's counterclaim is compulsory. Because Officer Harvey's counterclaim is compulsory, it is within this court's ancillary jurisdiction to hear the counterclaim. Given this, plaintiff's motion to dismiss the counterclaim on the ground that this court lacks subject-matter jurisdiction shall be denied.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

1. Plaintiff's motion to dismiss the defendant's counterclaim for lack of subject-matter jurisdiction, shall be, and it hereby is, denied.

2. Judgment in accordance with the verdict shall be, and it hereby is, entered for the defendant in the above-styled action.

The clerk is hereby directed to send a certified copy of this Order to all counsel of record.