# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamestown Condominium,  :
an unincorporated association  :
            :
            :
   v.        : No. 725 C.D. 2018
            : SUBMITTED: October 26, 2018
Pinchas "Pete" Sofayov, Susan  :
Sofayov, and Alan Frank; individually:
 and jointly and severally trading and :
doing business as S.P.S. Real Estate :
L.P. a Pennsylvania Limited  :
Partnership       :
            :
   v.        :
            :
Robert B. Keddie, Patricia M.  :
Gallagher and Robert Stevenson :
            :
Appeal of: Alan Frank, individually :
and jointly and severally trading and :
doing business as S.P.S. Real Estate :
L.P., a Pennsylvania Limited  :
Partnership       :

BEFORE:  HONORABLE ROBERT SIMPSON, Judge
       HONORABLE P. KEVIN BROBSON, Judge
       HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER         FILED: May 3, 2019

   Alan Frank, individually and jointly and severally trading and doing business as S.P.S. Real Estate L.P. (S.P.S.), appeals from two April 11, 2018 Orders of the Court of Common Pleas of Allegheny County (Trial Court). The first Order struck a Fourth Amended Complaint, filed by Mr. Frank *pro se* on his own behalf, and a Complaint to Join Francis X. McTiernan as an additional defendant. The second Order dismissed a

Third Amended Complaint, filed by Mr. Frank *pro se* on behalf of S.P.S., against Robert B. Keddie, Patricia M. Gallagher, and Robert Stevenson (together, Additional Defendants) and Jamestown Condominium (Jamestown). We affirm both Orders.

### Background

This complex, convoluted dispute is well known to this Court, which has already heard and decided two prior appeals involving these parties. The lengthy procedural history of this matter has been set forth in two unreported memorandum decisions: *Jamestown Condominium v. Sofayov* (Pa. Cmwlth., No. 1459 C.D. 2014, filed July 30, 2015) (*Jamestown I*), and *Jamestown Condominium v. Sofayov* (Pa. Cmwlth., No. 2642 C.D. 2015, filed February 22, 2017) (*Jamestown II*).

Jamestown is an unincorporated association operating a residential condominium at 500 Alden Drive in Scott Township, Pennsylvania. S.P.S. is a Pennsylvania limited partnership comprised of Mr. Frank as general partner and Pinchas "Pete" Sofayov and Susan Sofayov as limited partners. In 2011, S.P.S. purchased Unit 126 at Jamestown.

This litigation began in September 2011 when Jamestown filed a collection action against S.P.S. in Magisterial District Court. In its Complaint, Jamestown sought to recover $1,040.20 in delinquent condominium assessments and fees for Unit 126, plus attorneys' fees, costs, and interest. The Magisterial District Court entered Judgment in Jamestown's favor.

Following an appeal to the Trial Court, this litigation took on "the form of the legal version of the mythical Lernean Hydra, resulting in, *inter alia*, arbitration, complaints, amended complaints, counterclaims, amended counterclaims, recusal requests and the recusals of two judges, writs of mandamus, and accusations of fraud,

conspiracy, mismanagement, and the unlicensed practice of law."[1] *Jamestown I*, slip op. at 3. This description remains apt, although a third trial judge has since recused himself from the proceedings.

Jamestown and S.P.S. settled the underlying collection action in 2016. Thereafter, Jamestown moved to voluntarily discontinue its case, which the Trial Court granted in July 2017. Under the Settlement Agreement, Jamestown agreed to waive all existing unpaid assessments on Unit 126's account and set the balance to $0, and S.P.S. agreed to pay Jamestown unpaid common and reserve charges in the amount of $6,251.26.

What remains in dispute are the dispositions of the Third Amended Complaint filed by Mr. Frank on S.P.S.'s behalf,[2] and the Fourth Amended Complaint filed by Mr. Frank on his own behalf. The Third Amended Complaint joined three Additional Defendants: Ms. Gallagher, Jamestown's former President; Mr. Keddie, Jamestown's former attorney; and Mr. Stevenson, President of Stevenson Williams Company, which provides management services to Jamestown.

In July 2017, after Jamestown's discontinuance of its case, the Trial Court granted Additional Defendants leave to file preliminary objections to the Third Amended Complaint and ordered S.P.S. to file a reply brief. Additional Defendants filed Preliminary Objections, but S.P.S. did not file a reply brief. Instead, Mr. Frank filed a Fourth Amended Complaint against Additional Defendants and a Complaint to Join Mr. McTiernan, Jamestown's present attorney, as an additional defendant.

---

[1] As our Court explained in *Jamestown I*, Lernean Hydra was a monster from Greek and Roman mythology with several heads, each of which, once severed off, grew back as two heads. *Jamestown I*, slip op. at 1 n.3.

[2] In *Jamestown II*, we concluded that Mr. Frank, as S.P.S.'s general partner, could represent S.P.S. *pro se* in these proceedings. *Jamestown II*, slip op. at 12.

3

Thereafter, Additional Defendants and Mr. McTiernan filed Preliminary Objections to the Fourth Amended Complaint.

After oral argument by the parties, on April 11, 2018, the Trial Court entered two Orders disposing of the Third and Fourth Amended Complaints. In the first Order, the Trial Court granted the Preliminary Objections filed by Additional Defendants and Mr. McTiernan and struck the Fourth Amended Complaint and Complaint to Join. The Trial Court concluded as follows:

> [T]he Fourth Amended Complaint and the Complaint to Join were filed by "Alan Frank," whereas the Third Amended Complaint was filed by "[S.P.S.]" [Mr.] Frank cannot avail himself of either [Pennsylvania] Rule [of Civil Procedure] 1028(c)(1) or Rule 2229(b) because a person amending under [Rule] 1028(c)(1) or joining a party under [Rule] 2229(b) must already be a party to the action. While [Mr.] Frank may act **on behalf of** S.P.S. because he is its general partner, he is not, as he argues, the "alter ego" or "same thing" as S.P.S.[] [Mr.] Frank is a natural person, whereas S.P.S. is an entity recognized by law.
>
> The Fourth Amended Complaint and the Complaint to Join [Mr.] McTiernan are stricken. A ruling on the [P]reliminary [O]bjections to the currently operative Third Amended Complaint against [A]dditional [D]efendants will be entered in a separate order.

Trial Ct. Order, 4/11/18, at 1-2 (footnotes omitted) (emphasis in original).

In the second Order, the Trial Court granted Additional Defendants' Preliminary Objections in the Nature of a Demurrer to the Third Amended Complaint and dismissed the Third Amended Complaint with prejudice. The Trial Court also dismissed all other pending motions as moot. Mr. Frank now appeals to this Court.

## **Issues**

(1)     Did the Trial Court abuse its discretion in striking the Fourth Amended Complaint?

4

(2) Did S.P.S., which was damaged by the abusive litigation tactics of Jamestown's attorneys, have standing to seek disgorgement of their legal fees?

(3) Were the factual allegations of the Third Amended Complaint sufficient to withstand demurrers for the claims of abuse of process, conspiracy, interference with contractual rights, and conversion?

## Analysis

### I. Fourth Amended Complaint

Mr. Frank asserts that the Trial Court abused its discretion in striking the Fourth Amended Complaint. Mr. Frank contends that S.P.S., as a limited partnership, is not an entity separate from its partners and that Mr. Frank, as its general partner, is an aggrieved party in his own right. Thus, he claims that he properly substituted himself for S.P.S. as the plaintiff in the Fourth Amended Complaint. We disagree.

In support of his position, Mr. Frank relies on this Court's decisions in *Jamestown II* and *In re Lawrence County Tax Claim Bureau*, 998 A.2d 675 (Pa. Cmwlth. 2010). We conclude, however, that Mr. Frank's reliance on these cases is misplaced. Both *Jamestown II* and *Lawrence County* held that the general partner of a limited partnership could represent the partnership *pro se* in legal actions. *See Jamestown II*, slip op. at 12; *Lawrence Cty.*, 998 A.2d at 680. Neither case held that a limited partnership is "legally interchangeable" with its individual partners, as Mr. Frank contends.

In *Lawrence County*, this Court explained that there is a distinction between a traditional partnership and a limited partnership, the latter of which has long been recognized as a legal entity for at least some purposes:

> The limited partnership has been described as a hybrid—it is neither a partnership (as that term is usually defined) nor a corporation, though it bears a strong resemblance to both. Limited partnerships are sometimes

5

designated as a "quasi-corporate entity" that can act only through a statutorily designated representative, the general partner.

*Lawrence Cty.*, 998 A.2d at 679 (quoting 59A Am. Jur. 2d *Partnership* § 782 (2003)). In *Jamestown II*, we explained that Mr. Frank, as S.P.S.'s general partner, was "acting both *to protect the assets of the limited partnership*" and to protect his own interests as an individual "trading in the firm name" who might be held liable for S.P.S.'s obligations. *Jamestown II*, slip op. at 12 (emphasis added).

These cases – recognizing the distinction between a limited partnership and its partners – are consistent with earlier decisions of this Court. *See, e.g., Penn Towers Assocs., LP v. Com.,* 866 A.2d 1205, 1207 n.4 (Pa. Cmwlth. 2005) (noting that, in the realm of taxation, "[l]imited partnerships . . . are entities separate from their . . . partners and transfers between these entities and their . . . partners are fully taxable") (quoting 61 Pa. Code § 91.154); *Farda v. Com.*, 849 A.2d 297, 300 (Pa. Cmwlth. 2004) (individuals, even those that comprise the only partners of the limited partnership, are "someone other than" the partnership for purposes of determining the applicability of the realty transfer tax).

Moreover, contrary to Mr. Frank's assertion on appeal, S.P.S. may be named as a party in a lawsuit under the Pennsylvania Rules of Civil Procedure. Under Rule 2127(a), claims by a partnership, whether traditional or limited, must be brought "in the names of the then[-]partners trading in the firm name, in the following manner: 'A, B and C trading as X & Co.'" Pa. R.C.P. No. 2127(a). "[T]he purpose of [Rule 2127's] requirement that the partners be named as individual plaintiffs is to insure that a counterclaim may be enforced against the partner's individual property." *In re Penn Cent. Transp. Co.*, 419 F. Supp. 1376, 1381 (E.D. Pa. 1976). Further, "[i]f a plaintiff prosecutes an action against a partnership in its firm name only, the partnership may prosecute any setoff, counterclaim or cross-action in its firm name." Pa. R.C.P. No.

6

2128(b). Notably, the Rules of Civil Procedure do not permit an individual partner to substitute himself for the partnership in a pending case in order to pursue personal claims well past the expiration of the statute of limitations.

Further undercutting Mr. Frank's position is the General Assembly's recent amendment to the statute governing limited partnerships. During the pendency of this litigation, the General Assembly repealed the former statute governing limited partnerships and replaced it with the Pennsylvania Uniform Limited Partnership Act of 2016, 15 Pa. C.S. §§ 8611-8695 (LPA).[3] Section 8620(a) of the LPA expressly provides that "[a] limited partnership is *an entity distinct from its partners*." 15 Pa. C.S. § 8620(a) (emphasis added). Furthermore, Section 8611(c) of the LPA states that "this chapter governs all limited partnerships." 15 Pa. C.S. § 8611(c). Section 8620(a) of the LPA effectively codified existing common law recognizing the distinction between a limited partnership and its individual partners.

Mr. Frank further contends that the averments regarding damages he suffered in the body of the Third Amended Complaint demonstrated that he was, in fact, an aggrieved party. We disagree.

Under Pennsylvania Rule of Civil Procedure 1018, "[t]he caption of a complaint shall set forth . . . the names of all the parties." Pa. R.C.P. No. 1018. Our Court has further explained that the "[p]arties to an action are those *who are named as such in the record of a case* and have been properly served with process." *Burger v. Borough of Ingram*, 697 A.2d 1037, 1040 (Pa. Cmwlth. 1997) (emphasis added). Prior to the Fourth Amended Complaint, Mr. Frank had never been identified as a party to this

---

[3] The Pennsylvania Revised Uniform Limited Partnership Act, *formerly* 15 Pa. C.S. §§ 8501-8594, was repealed on November 21, 2016 and replaced by the LPA, which took effect on February 21, 2017.

7

action *as an individual*; he was only named in prior captions *as the general partner of S.P.S.*

We also reject Mr. Frank's claim that his substitution of himself for S.P.S. as the plaintiff in the Fourth Amended Complaint was merely a "misnomer" that can be corrected by granting him leave to amend the Complaint. Pennsylvania Rule of Civil Procedure 1033(a) states that "[a] party, either by filed consent of the adverse party or by leave of court, may at any time . . . add a person as a party, correct the name of a party, or otherwise amend the pleading." Pa. R.C.P. No. 1033(a). Mr. Frank obtained neither the consent of Additional Defendants nor leave of court before he filed the Fourth Amended Complaint naming himself as the plaintiff.

Moreover, Rule 1033(a) does not permit the substitution of a new plaintiff after the statute of limitations has expired. A court may permit an amendment to the caption of a pleading after the limitations period has run only "to correct the name of an adverse party, *but not to add new parties.*" *Piehl v. City of Phila.*, 930 A.2d 607, 611 (Pa. Cmwlth. 2007) (*en banc*), *aff'd*, 987 A.2d 146 (Pa. 2009). A court "will not permit the amendment of a complaint, after the statute of limitations has run, to bring a new and distinct party into an action." *Burger*, 697 A.2d at 1041; *see Glover v. SEPTA*, 794 A.2d 410, 415 (Pa. Cmwlth. 2002) (holding that the amendment of a complaint to substitute a commonwealth agency for the Commonwealth amounted to adding a new party, not merely correcting the caption).

We conclude that S.P.S. is an entity separate and apart from Mr. Frank as its general partner, and, thus, Mr. Frank could not substitute himself for S.P.S. as the plaintiff in the Fourth Amended Complaint. Therefore, the Trial Court properly struck the Fourth Amended Complaint filed by Mr. Frank on his own behalf.

8

## II. Third Amended Complaint

On appeal, Mr. Frank challenges the Trial Court's dismissal of Counts I and Counts VII through X of the Third Amended Complaint.[4] We will address each of these Counts separately.[5]

### Count I (Disgorgement of Legal Fees)

In Count I, S.P.S. sought disgorgement of the legal fees that Jamestown paid to Mr. Keddie. The Trial Court dismissed Count I for lack of standing. On appeal, Mr. Frank argues that, as a party aggrieved by Mr. Keddie's allegedly unlawful acts, S.P.S. has standing to seek disgorgement of the legal fees that Jamestown paid to Mr. Keddie. We find this claim waived.

An appellant must develop the argument portion of his brief with pertinent discussion of the issues, including citations to relevant authority. Pa. R.A.P. 2119(a). When an appellant "fail[s] to satisfy this requirement, th[is] Court is 'neither obliged, nor even particularly equipped, to develop an argument for [the appellant].'" *Skytop Meadow Cmty. Ass'n, Inc. v. Paige*, 177 A.3d 377, 384 (Pa. Cmwlth. 2017) (citation omitted).

Here, Mr. Frank failed to properly develop his argument or cite any relevant legal authority in support of his position that S.P.S. had standing to seek disgorgement of attorneys' fees. The only case Mr. Frank cites is *Office of Disciplinary Counsel v. Walker*, 366 A.2d 563 (Pa. 1976), in which our Supreme Court ordered that restitution of attorneys' fees and executor's commissions be paid to a decedent's estate for

---

[4] The Trial Court dismissed Counts II through VI of the Third Amended Complaint as moot. Mr. Frank does not challenge the dismissal of Counts II through VI on appeal.

[5] Our "review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to a determination of whether th[e trial] court abused its discretion or committed an error of law." *Petty v. Hosp. Serv. Ass'n of Ne. Pa.*, 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009), *aff'd*, 23 A.3d 1004 (Pa. 2011).

professional misconduct in the course of the attorney's representation of the estate. *Walker* is inapposite, however, as that case involved an attorney disciplinary matter, there was no issue regarding standing, and the challenged funds were returned to the client, who was the victim of the attorney's misconduct.

Therefore, we conclude that Mr. Frank has waived his challenge to the dismissal of Count I.

### Count VIII (Abuse of Process)

In Count VIII, S.P.S. asserted a claim for abuse of process by Mr. Keddie and Ms. Gallagher. This claim was premised on an allegedly defamatory allegation included in Jamestown's Second Amended Complaint, which was prepared by Mr. Keddie and verified by Ms. Gallagher. The allegation stated:

> Upon information and belief, individual Alan Frank was formerly a licensed attorney at law until he was charged, tried and convicted or otherwise found to be guilty in state and/or federal courts of criminal activities which involved, among other possible crimes, forgery and unlawful conversion of client funds, and was therefore sentenced to prison; whereupon said Alan Frank was disbarred as an attorney and banned from the practice of law before the courts of the Commonwealth of Pennsylvania, although Defendant Alan Frank still possesses and can use a sophisticated understanding and abilities to exploit the substantive and procedural laws and rules of the Courts of the Commonwealth of Pennsylvania.

Second Am. Compl., ¶ 63.

According to Mr. Frank, he was neither disbarred nor convicted of theft or forgery.[6] As such, he contends that Mr. Keddie and Ms. Gallagher "committed a gross

---

[6] Mr. Frank's law license was suspended in 1992, retroactive to July 15, 1988. *See* Mr. Frank's Br., Ex. A. This Court also takes judicial notice of the fact that the website of the Disciplinary Board of the Supreme Court of Pennsylvania indicates that Mr. Frank's license was suspended on July 15, 1988 for an undisclosed criminal conviction. *See* https://www.padiscplinaryboard.org (last visited on March 25, 2019).

perversion of legal process and fraud upon the court when they switched documents and filed an unauthorized, perjurious, scandalous version of Jamestown's Second Amended Complaint." Mr. Frank's Br. at 29. Mr. Frank asserts that "[t]hey destroyed the impartiality" of two trial judges "and probably others" by filing the above averment and "caused those judges to commit reversible errors from which Mr. Frank appealed successfully on two separate occasions" and caused one judge to recuse himself. *Id.* at 33. Mr. Frank alleges various other misdeeds relating to Paragraph 63 of Jamestown's "adulterated" Second Amended Complaint. *Id.* at 33-37. Mr. Frank further alleges that Mr. Keddie was the primary decision-maker for all transactions and abused the legal process for the sole purpose of collecting legal fees. *Id.* at 34; Third Am. Compl., ¶¶ 22, 23, 51.

To establish a claim for abuse of process, the plaintiff must show "that the defendant: (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993). "The significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. . . ." *Id.* at 192-93 (quoting Restatement (Second) of Torts § 682 cmt. b (Am. Law Inst. 1977)) (brackets in original). Our Court has explained:

> It is not enough that the defendant had bad or malicious intentions or that the defendant acted from spite or with an ulterior motive. Rather, there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action.

11

*Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1024-25 (Pa. Cmwlth. 2014) (quoting *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191-92 (Pa. Super. 1994)).

Here, Jamestown initiated legal process against S.P.S. to recover delinquent condominium assessments and fees. Mr. Frank failed to demonstrate that the *primary* purpose of the underlying lawsuit was inherently nefarious or that Mr. Keddie and Ms. Gallagher, as Jamestown's agents, had illegitimate or ulterior motives in taking steps to carry out such process. Therefore, the Trial Court properly dismissed Count VIII.

### Count IX (Interference With Contractual Rights)

In Count IX, S.P.S. asserted that Additional Defendants unlawfully interfered with S.P.S.'s contractual rights as a unit owner at Jamestown – *i.e.*, the rights provided to the unit owners by Jamestown's Declaration and Code of Regulations. S.P.S. also alleged that Additional Defendants deprived S.P.S. of its "contractual" rights to the undiminished rental value of its property; a statutorily compliant resale certificate; management of its real estate by honest fiduciaries; and ownership of the real estate unencumbered by fraudulently created debt that impeded marketability.

The elements of the tort of interference with contractual relations are as follows:

> To sustain a cause of action for intentional interference with business relations, it must be alleged that: (1) there is an existing contractual relationship between the plaintiff and a third party; (2) the defendant interfered with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (3) the defendant was not privileged to act in this manner; and (4) the plaintiff suffered pecuniary loss as a result of the breach of contract.

*Al Hamilton*, 644 A.2d at 191. Essential to the right of recovery is the existence of a contractual relationship between the plaintiff and *a third party other than the*

12

*defendant. Daniel Adams Assocs., Inc. v. Rimbach Publ'g, Inc.*, 519 A.2d 997, 1001 (Pa. Super. 1987).

Here, Mr. Frank fails to identify any contractual relationship *between S.P.S. and a third party* with which Additional Defendants interfered. Based on the allegations in the Third Amended Complaint, Additional Defendants were acting *as Jamestown's agents* when committing the alleged interference. As agents of one of the parties to the contract, Additional Defendants could not interfere with that party's own contract. *See Daniel Adams*, 519 A.2d at 1001 ("[W]here . . . a plaintiff has entered into a contract with a corporation, and that contract is terminated by a corporate agent who has acted within the scope of his or her authority, the corporation and its agent are considered one so that there is no third party against whom a claim for contractual interference will lie."). Therefore, the Trial Court properly dismissed Count IX for failure to state a claim.

### Count X (Conversion)

In his appellate brief, Mr. Frank argues that the Trial Court erred in dismissing Count X of the Third Amended Complaint for failure to state a claim. However, the Trial Court actually dismissed Count X for mootness. *See* Trial Ct. Order, 4/11/18, at 3. Mr. Frank does not address the issue of mootness in his appellate brief. Moreover, as with Count I, Mr. Frank fails to properly develop his argument or cite any relevant legal authority to support his claim. Therefore, we conclude that Mr. Frank has waived his challenge to the dismissal of Count X.

### Count VII (Civil Conspiracy)

In Count VII, S.P.S. asserted a claim for civil conspiracy against Additional Defendants. The elements of a civil conspiracy claim are: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act

13

by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. *Weaver v. Franklin Cty.*, 918 A.2d 194, 202 (Pa. Cmwlth. 2007). However, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Id.* When a party fails to "sufficiently allege in [other] counts any unlawful act or unlawful means," the conspiracy claim must also fail if it is based on those claims. *Raneri v. DePolo*, 441 A.2d 1373, 1376 (Pa. Cmwlth. 1982).

Because we conclude that the Trial Court properly dismissed all of the other Counts in the Third Amended Complaint, as discussed above, the Trial Court also properly dismissed Count VII.

### Conclusion

For the foregoing reasons, we affirm the Trial Court's Orders.

_____
ELLEN CEISLER, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamestown Condominium,      :
an unincorporated association    :
     :
    v.        :   No. 725 C.D. 2018
     :
Pinchas "Pete" Sofayov, Susan   :
Sofayov, and Alan Frank; individually:
 and jointly and severally trading and   :
doing business as S.P.S. Real Estate   :
L.P. a Pennsylvania Limited      :
Partnership      :
     :
    v.        :
     :
Robert B. Keddie, Patricia M.    :
Gallagher and Robert Stevenson   :
     :
Appeal of: Alan Frank, individually   :
and jointly and severally trading and   :
doing business as S.P.S. Real Estate   :
L.P., a Pennsylvania Limited     :
Partnership      :

# **O R D E R**

AND NOW, this 3rd day of May, 2019, the Orders of the Court of Common

Pleas of Allegheny County in the above-referenced case, dated April 11, 2018, are

hereby AFFIRMED.


_____
ELLEN CEISLER, Judge