606 A.2d 1296

**PENN FOREST TOWNSHIP, Anthony Basile and Mary Ann Basile, Appellants,**

v.

**BEAR CREEK LAKES CIVIC ASSOCIATION, INC., Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1991.

Decided April 7, 1992.

Roger N. Nanovic, II, for appellants.

William Z. Scott, Jr., for appellee.

PALLADINO and SMITH, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Penn Forest Township (township), and Anthony Basile and Mary Ann Basile (the Basiles), (collectively Appellants) appeal an order of the Court of Common Pleas of Carbon County (trial court) which denied Appellants' request for injunctive relief which would require the Bear Creek Lakes Civic Association, Inc. (Association) to remove gates which close across roads within a private residential subdivision named Bear Creek Lakes (subdivision).

The parties stipulated to the following facts and the trial court approved and adopted their stipulation: the subdivision was approved by the township on August 30, 1965, and approved final subdivision plans were recorded. The Basiles own property and reside in the subdivision. The Association governs the subdivision through a board of directors, and owns the roads in the subdivision. Member-

ship in the Association is open to all persons owning property in the subdivision. The subdivision plan depicts subdivision roads which intersect with surrounding state and township roads including a township road which bisects the subdivision.

In 1980, the Board of Directors of the Association decided that closing some of the entranceways from state and township highways into the subdivision was a good method of protecting the entire community from criminal acts by persons outside the subdivision. As a result sixteen gates were installed by the Association at the entranceways. Stipulation of parties at 1–3 and trial court's opinion at 2–4.

The trial court made the following additional findings: one of the gates was installed at an intersection two hundred feet from the Basiles' residence (intersection). The gate was locked and the Basiles were not given a key to the lock. The gate blocked the Basiles from their shortest access to Route 903, and forced them to drive an additional one and a half miles to get to Route 903, the main route leading in and out of the subdivision. The volunteer fire company adjacent to the subdivision was provided with keys to the subdivision's gates. Ambulance personnel responding to calls have been seen turning around at the intersection after confronting the locked gate. Motorists and truck drivers occasionally use the Basiles' driveway and their front yard to turn around after discovering the locked gate at the intersection. Trial court's opinion at 5–6.

Appellants initiated an action in equity in May of 1985 seeking an injunction requiring the Association to remove the gates. After a hearing in December of 1987, the trial court issued a memorandum opinion and order holding that the Appellants had standing to bring their suit. A second hearing was held after which the parties submitted proposed findings of fact and conclusions of law. The trial court then denied injunctive relief in an adjudication and decree nisi. The trial court held that the township had not established a clear right to relief and that the Basiles had an adequate remedy at law.

A motion for post-trial relief was filed by the Appellants, which was denied by the trial court. On appeal,[1] Appellants raise the following issues: (1) whether a lot owner has a cause of action in equity to enjoin the blockage of access to subdivision roads when multiple remedies at law exist, but resort to those remedies will not resolve the entire controversy; (2) whether the trial court erred by dismissing the equitable claim on the basis of an adequate remedy at law as opposed to transferring the case to the law side of the court, and (3) whether Appellants have a clear right to relief when the erection of the gates violates the township subdivision ordinance which prohibits the creation of dead-end streets.

■ As to the first issue, the trial court held in its opinion, and the Association acknowledges in its brief, that the Appellants could seek remedies at law by bringing actions in trespass against the strangers who use their driveway and front lawn to turn around because the gates block their access to the outside roads, and breach of contract actions against the Association for violation of their easement. In the event that access to their home by medical or fire personnel is blocked by the gates, Appellants can bring an action for damages incurred by them as a result of the inability of the medical or fire personnel to access their home.

Appellants argue that they are entitled to an equitable remedy, and should not be foreclosed from proceeding in equity on the ground that they have an adequate remedy at law, because to secure a remedy at law they would be required to resort to piecemeal legal steps. They argue that, to be adequate, their remedy at law must be both complete and effective. Appellants rely on the supreme court's decision in *Schrader v. Heath*, 408 Pa. 79, 182 A.2d 696 (1962), in support of their argument.

1. Our scope of review in equity matters is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Quaker City Yacht Club v. Williams*, 59 Pa.Commonwealth Ct. 256, 429 A.2d 1204 (1981).

In *Schrader,* the supreme court held that equity is available when "there are available many legal remedies, none of which will be dispositive of the entire controversy...." *Id.,* 408 Pa. 79 at 83, 182 A.2d at 698. Relying on *Schrader,* this court has held that "the remedy must not only be adequate, it must be complete and effective." *Rankin v. Chester–Upland School District,* 11 Pa.Commonwealth Ct. 232, 238, 312 A.2d 605, 608 (1973).

In the case at bar, the remedies at law would not be complete or effective. Actions in trespass against the strangers who use the Basiles' driveway and front lawn, if successful, would not prevent other strangers from committing similar acts of trespass. A breach of contract action for violation of the Basiles' easement against the Association, if successful, would not operate to compel the opening of the other gates in the subdivision. Actions for damages incurred by the Basiles as a result of the inability of medical or fire personnel to access their home would necessarily have to be brought after the injury had occurred. Therefore, it is clear that none of these remedies alone would be dispositive of the entire controversy, and even if all of the remedies were to be sought by the Basiles, the remedies would not be complete and effective. Therefore, under *Schrader,* the trial court erred by not allowing the Appellants to proceed in equity.

Because we have determined that Appellants were entitled to proceed in equity, we need not address the second issue raised by Appellants which was whether the trial court was required to transfer the case to the law side of the court.

■ As to the third issue, Appellants argue that by erecting the gates and keeping them closed and locked, the Association has in effect created dead-end streets in the subdivision. They argue further that because the subdivision ordinance in effect at the time that the subdivision was approved prohibited dead-end streets, as did the amended subdivision ordinance in effect at the time the gates were

erected, they have a clear right to have the Association enjoined from creating the dead-end streets.

The subdivision ordinance in effect at the time that the subdivision plan was approved provided as follows with respect to dead-end streets:

> Dead end streets shall be prohibited, except as stubs to permit future street extension into adjoining tracts, or when designated as cul-de-sacs. Stub streets greater than one lot depth in length shall be provided with a temporary turn-around to the standards required for cul-de-sacs.

Subdivision ordinance adopted by the township board of supervisors on September 7, 1965, Article V, Section 505.

When the subdivision plan for the Bear Creek Lakes subdivision was approved, the plan did not include the gates; however, if the gates had been included on the plan, the plan would not have complied with the section of the subdivision ordinance set forth above.

Furthermore, the township subdivision ordinance in effect at the time when the gates were erected, provided as follows with respect to dead-end streets:

> Dead-end streets shall be prohibited, except as stubs to permit future street extensions into adjoining tracts, or when designed as cul-de-sacs to serve residential areas.

Subdivision ordinance adopted by the township board of supervisors on June 2, 1975, Article 3, Section 3.208(i).

Neither subdivision ordinance would allow for the creation of dead-end streets such as the ones the Association has created by erecting the gates and closing and locking them.

Section 507 of the Pennsylvania Municipalities Planning Code (MPC) [2] provides as follows:

> Where a subdivision and land development ordinance has been enacted by a municipality under the authority of this article no subdivision or land development of any lot,

2. Act of July 31, 1968, P.L. 805, *as amended,* as reenacted by § 35 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10507.

tract or parcel of land shall be made, no street, sanitary sewer, storm sewer, water main or other improvements in connection therewith shall be laid out, constructed, opened or dedicated for public use or travel, or for the common use of occupants of buildings abutting thereon, except in accordance with the provisions of such ordinance.

This section provides further support for the Appellants' argument that they have a clear right to relief on the ground that the Association was prohibited by the subdivision ordinance from creating dead-end streets. The creation of the dead-end roads by the Association was not in accordance with the subdivision ordinance, as required by section 507, when the subdivision was approved or when the gates themselves were installed.

Accordingly, we hold that Appellants had a clear right to relief in the form of an injunction which would require the Association to remove the gates. The trial court erred when it denied such relief to Appellants. Therefore, we reverse and remand to the trial court with instructions to enter a permanent injunction in accordance with the foregoing opinion.

## ORDER

AND NOW, April 7, 1992, the order of the Court of Common Pleas of Carbon County in the above-captioned matter is reversed, and the case is remanded to the trial court with instructions to enter a permanent injunction in accordance with the attached opinion. Jurisdiction is relinquished.