PETERS TOWNSHIP, Washington
County, a Pennsylvania
municipality

v.

Jordan RUSSELL, Gary A. Meyer and
Rita A. Meyer, husband and wife,
Gunther J. Kaier and Virginia C. Kaier, husband and wife, Doran B. Mauldin and Olga Mauldin, husband and wife, Ray D. Moffitt and Martha M.
Moffitt, husband and wife, Appellants.

Commonwealth Court of Pennsylvania.

Argued April 14, 2015.

Decided July 30, 2015.

Emmanuel S. Anthou, Canonsburg, for appellants.

John M. Smith, Canonsburg, for appellee.

BEFORE: RENÉE COHN
JUBELIRER, Judge, and MARY
HANNAH LEAVITT, Judge, and P.
KEVIN BROBSON, Judge.

OPINION BY Judge MARY HANNAH
LEAVITT.

Jordan Russell, Gary A. Meyer, Rita A. Meyer, Gunther J. Kaier, Virginia C. Kaier, Doran B. Mauldin, Olga Mauldin, Ray D. Moffitt, and Martha M. Moffitt (Landowners) appeal an order of the Washington County Court of Common Pleas (trial court), which granted injunctive relief to Peters Township (Township). Specifically, the trial court ordered Landowners to remove a gate they had installed across a private road and permanently enjoined them from replacing it, or placing another obstruction across the private road without leave of court. We affirm on different grounds.[1]

1. This court may affirm the decision of the trial court on any grounds. *Belitskus v. Hamlin Township,* 764 A.2d 669, 671 n. 4 (Pa. Cmwlth.2000).

The following facts are not in dispute, according to the pleadings. In 1951, a subdivision plan was approved for a residential development in the Township. The plan identified several roadways within the subdivision, including Mt. Blaine Drive, which is bisected by Nevin Drive at a Y-intersection. The subdivision plan did not include any gates. Landowners live on property adjacent to "Lower" Mt. Blaine Drive,[2] which is located south of Nevin Drive. Lower Mt. Blaine Drive is a gravel road and maintained by Landowners, not the Township. Some of the roadways in the subdivision have become Township roads, but Lower Mt. Blaine Drive remains a private road.

In October 2013, Landowners installed a gate with a chain and padlock at the end of Lower Mt. Blaine Drive next to Nevin Drive. In their answer to the Township's complaint, Landowners explained that the padlock was for show because they did not, in fact, lock the gate. The gate was installed only for purposes of limiting, not eliminating, traffic entering Lower Mt. Blaine Drive from Upper Mt. Blaine Drive and Nevin Drive.

On October 29, 2013, the Township sent a letter to Landowners identifying several public safety concerns with the gate. Specifically, the Township's Chief of Police and Fire Chief believed the gate would impede their ability to respond to emergencies.

When Landowners did not remove the gate, the Township filed a complaint seek-ing a permanent and preliminary injunction on two grounds. First, the Township asserted that the gate violated the Township's Subdivision and Land Development Ordinance (SALDO)[3] in several respects. Complaint, ¶¶ 49–51. Second, the Township claimed that Landowners violated the law commonly known as the Private Road Act,[4] which requires court approval before a swinging gate can be installed on a private road. Complaint, ¶¶ 64–72.

In their answer, the Landowners presented numerous factual allegations in response to the Township's request for injunctive relief.[5] Landowners stated that "someone" caused "a large boulder to be placed at the end of Julrich [Drive] where there originally was constructed an asphalt Cul-de-sac or turnaround" at the intersection with Upper Mt. Blaine Drive. Answer, ¶ 18; Reproduced Record at 218a (R.R.——). Thereafter, the boulder was removed, and the Township paved Upper Mt. Blaine Drive, which resulted in an "exponential, significant and substantial increase in" traffic along Lower Mt. Blaine Drive. Id. Landowners alleged that an unnamed individual has created numerous disturbances by driving down Lower Mt. Blaine Drive in a "wild and reckless manner while making extremely rude and vulgar comments and hand gestures to [the Landowners]." Answer, ¶ 32; R.R. 224a. Landowners alleged that when they sought guidance from Township representatives, they were told repeatedly that Lower Mt. Blaine Drive was a private road and, ac-

---

2. Landowners refer to the portion of Mt. Blaine Drive north of Nevin Drive as "Upper" Mt. Blaine Drive and the portion to the south as "Lower" Mt. Blaine Drive. For purposes of clarity, we will follow this naming convention.

3. PETERS TOWNSHIP SUBDIVISION AND LAND DEVELOPMENT ORDINANCE, No. 437, adopted October 22, 1990, as amended, CHAPTER 22 CODE OF ORDINANCES; Reproduced Record at 55a–210a.

4. Act of June 13, 1836, P.L. 551, as amended, 36 P.S. §§ 2731–2891.

5. Landowners' answer does not contain a verification as required by PA.R.C.P. No. 1024. However, the Township did not raise that issue.

cordingly, "outside of the jurisdiction" of the Township's governance. Answer, ¶ 19; R.R. 220a. When Landowners contacted the local police and fire departments about a gate, they identified "absolutely no problem, adverse circumstances and/or any other concerns" with the installation of a gate. Answer, ¶ 24; R.R. 222a.

Landowners admitted that the installed gate had a padlock, but denied that the gate had ever been locked. Complaint, ¶ 30; R.R. 14a: Answer, ¶ 30; R.R. 223a.[6] Further, Landowners alleged that "access of Lower Mt. Blaine to postal, delivery, emergency vehicle or indeed any lawful user or any resident, guest or invitee of the entire plan" was not affected by the gate. Answer, ¶ 30; R.R. 223a. Landowners asserted that the gate had achieved its purpose of reducing the amount of traffic along Lower Mt. Blaine Drive. *Id.* ("The lock and chain are merely 'dummies' intended to appear to a casual observer to secure the gate when, in fact, the gate is unlocked. This was intended and has acted precisely as an effective

visual deterrent to unauthorized use of Lower Mt. Blaine ...").

The Township moved for judgment on the pleadings, which the trial court granted on August 14, 2014. The trial court held that the gate violated Section 76(I) of the Township's SALDO [7] because it created a dead-end street. The trial court ordered Landowners to remove the gate and enjoined them from installing a new one or a similar obstruction without first seeking leave of the trial court. Landowners appealed to this Court.

In their appeal,[8] Landowners raise three arguments. First, Landowners contend that the trial court erred in granting the Township's motion for judgment on the pleadings because there were disputed facts. Next, Landowners argue that the Township effected a taking of their property under the Eminent Domain Code [9] when it paved Upper Mt. Blaine Drive because that action increased the traffic on Lower Mt. Blaine Drive. Finally, Landowners contend that because Township employees consented to the installation of the gate,

---

6. Specifically, the Township averred in its complaint:

> The gate is made of galvanized pipe supported by two six-foot posts. The gate is chained on one side, and there is a lock attached to the chain. The [Landowners] locked the gate.

Complaint, ¶ 30; R.R. 14a. Landowners responded to this averment as follows:

> Admitted, as to physical description of metal gate and wood supports. Denied. There was and is a lock and chain affixed only to one wood post. The gate itself has never been locked or secured in any fashion. It has always been unlocked and open for use by anyone with a lawful purpose.

Answer, ¶ 30; R.R. 223a.

7. Section 76(I) states, in relevant part, as follows:

> *Dead-end streets shall be prohibited,* except for future access to an adjoining property or because of authorized stage develop-

ment. Such streets, shall be provided with a temporary paved turnaround, within the subdivision or development, and the use of such turnaround shall be guaranteed to the public by recorded easement until such time as the street is extended. A temporary turnaround shall have a minimum paving radius of 40 feet and a minimum easement radius of 43 ....

SALDO § 76(I); R.R. 107a (emphasis added).

8. In reviewing an order granting a motion for judgment on the pleadings, our scope of review is to determine whether the trial court committed an error of law or whether questions of material fact remain outstanding, such that the case should have gone to the jury. *Tobias v. Halifax Township*, 28 A.3d 223, 225 n. 4 (Pa.Cmwlth.2011). Our standard of review of an order granting or denying a motion for judgment on the pleadings is plenary. *Id.*

9. 26 Pa.C.S. §§ 101–1106.

the Township was barred by equitable estoppel from seeking an injunction. Corollary to this argument, Landowners contend that the trial court erred in holding that they waived their estoppel argument.

■ We begin with a brief review of judgment on the pleadings. Pennsylvania Rule of Civil Procedure 1034 permits the entry of judgment on the pleadings "[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay the trial." Pa.R.C.P. No. 1034(a). The trial court may grant a motion for judgment on the pleadings when there are no disputed facts and the moving party is entitled to judgment as a matter of law. *Trib Total Media, Inc. v. Highlands School District,* 3 A.3d 695, 698 n. 2 (Pa. Cmwlth.2010). The trial court must accept as true all well pled statements of fact in the light most favorable to the non-moving party. *Karns v. Tony Vitale Fireworks Corp.,* 436 Pa. 181, 259 A.2d 687, 688 (1969).

In their first argument, Landowners contend that the trial court erred in granting the Township's motion for judgment on the pleadings because there are facts in dispute. Specifically, Landowners allege that "there were other public access routes available," and that by paving Upper Mt. Blaine Drive, the Township "changed a complete[ly] private road with a cul de sac to a public access road without notice." Landowners' Brief at 27–28. The Township counters that there are no material disputed facts and its right to relief was clear.

■ Landowners have presented significant concerns related to the increased traffic on Lower Mt. Blaine Drive and that harm caused by this traffic. However, Landowners had recourse. Section 13 of the Private Road Act authorizes the erection of a swinging gate across the entrance of a private road. 36 P.S. § 2733. It states:

> In all cases of a private road, it shall be lawful for the owners of the land over which the same may be laid out or authorized, *to apply to the court aforesaid for leave to hang and maintain at their own expense, swinging gates across the road,* and thereupon the court shall direct the viewers appointed to view such road, or *in case the road has been already laid out,* may appoint other viewers in manner aforesaid, to inquire and report whether the same may be done without much inconvenience to the persons using such road.

36 P.S. § 2733 (emphasis added). Section 14 then states:

> *If it shall appear to the court that a gate or gates* may be hung as aforesaid, according to the prayer of the party, *without much inconvenience to the person or persons using such road, they shall decree accordingly,* and in such decree they shall order and direct that such gate or gates be made and kept in repair, and made easy for passing, by the respective owners of said land.

36 P.S. § 2734 (emphasis added). In sum, the installation of a swinging gate on a private road is lawful but only with the prior approval by the court, which, after hearing the evidence, must find that the swinging gate will not inconvenience those using the road.

Count II of the Township's Complaint asserted a right to injunctive relief under the above-cited provisions of the Private Road Act. In support of its motion for judgment, the Township argued as follows:

> As the Private Road Act applies to the instant proceeding, [Landowners] failed to adhere to its terms and never made any petition to any judicial body, including the Court, for permission to install a gate over Mt. Blaine Drive to restrict

access. [Landowners'] unilateral action not only failed to follow any statutory requirements but also deprived Peters Township of the opportunity to contest such plans by identifying the detrimental impacts on the health, safety and welfare of Township residents that the creation of a one-way street has.

Township Trial Court Brief at 8; R.R. 294a. The Township further challenged Landowners' position that

> because Mt. Blaine Drive is a private road, it is exempt from the regulations set forth in the SALDO, notably the prohibition on creation of dead-end streets. This line of *argument has been explicitly rejected by the Commonwealth Court* in a case that is nearly identical to the proceeding at-bar.

*Id.* (emphasis added).[10]

The Commonwealth Court "case" referenced above is *Penn Forest Township v. Bear Creek Lakes Civic Association, Inc.,* 147 Pa.Cmwlth. 134, 606 A.2d 1296 (1992). In *Penn Forest,* a neighborhood association, which owned the roads in its subdivision, installed 16 gates to block entry to the subdivision from state and township roads in the interest of crime prevention. The main entrance to the subdivision was left without a gate. The 16 gates were locked although the volunteer fire company was given keys. Ambulances were seen turning around after confronting the locked gate. This Court held that given this record, the locked gates created a series of dead end streets that violated Penn Forest Township's ordinance proscribing dead end streets in subdivisions.

In this case, the trial court held, under authority of *Penn Forest,* that Landowners' gate created a dead end street in violation of Section 76(I) of the Township's SALDO. Landowners dispute the trial court's determination that their *unlocked,* swinging gate created a dead end street. The question is whether the pleadings establish that Landowners' gate made Lower Mt. Blaine Drive a dead end street.

Unlike *Penn Forest,* there is no evidentiary record in this case. There are only pleadings, and they do not describe Lower Mt. Blaine Drive as a dead end street by virtue of the gate. There are no allegations that Landowners' gate has required those driving through the subdivision to back up and turn around, as was the case in *Penn Forest.* Landowners' gate is at a Y-intersection. Persons approaching Landowners' gate from Upper Mt. Blaine Drive do not have to turn around; they can simply proceed onto Nevin Drive or Upper Mt. Blaine Drive. Further, Landowners' gate is not placed at the entrance to the subdivision from the township road, as were the 16 gates in *Penn Forest.* In short, it is not clear that the facts, as pled, compel the conclusion that Landowners'

---

10. In contrast to the argument before the trial court, the Township argues to this Court as follows:

> Further, to the extent that the Landowners claim entitlement to use and operate "Lower Mt. Blaine" as a "private road" under the Private Roads Act, such argument is inapposite as Mt. Blaine Drive was part of a subdivision and is not within the scope of the Private Roads Act. 36 P.S. § 2731 *et seq.* However, even if "Lower Mt. Blaine" were considered to be within the scope of the Private Roads Act, the installation of

gates on such private roads still require court approval, which was neither applied-for nor granted. *See,* 36 P.S. § 2733.

Township Brief at 23–24. The Township's suggestion that a SALDO may trump the Private Road Act is not supported by legal authority, and none has been discovered in our own research. We do not consider this suggestion further. *Commonwealth v. Spontarelli,* 791 A.2d 1254, 1259 n. 11 (Pa.Cmwlth. 2002) ("Mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of this matter.").

swinging gate, which is unlocked, has created a dead end street.

On the other hand, it is undisputed that Landowners erected a swinging gate across a private road without first seeking leave of court. The Private Road Act expressly states that the request for a swinging gate may be made in a case where "the road has been already laid out...." Section 13 of the Private Road Act, 36 P.S. § 2733. Landowners respond that the Township never informed them that leave of court was required to install the gate.[11] Even if that factual allegation is true, it is irrelevant. Landowners are responsible for knowing and complying with the law. *In re Kearney*, 136 Pa.Super. 78, 7 A.2d 159, 161 (1939) (noting that ignorance of the law does not excuse a violation).

Landowners' list of facts in dispute relate to whether or not their swinging gate constituted an actual harm that outweighs the gate's benefits, *i.e.*, their peaceful enjoyment of their property. Again, this is irrelevant. In *Pennsylvania Public Utility Commission v. Israel*, 356 Pa. 400, 52 A.2d 317 (1947), the Commission sought to enjoin the operation of unlicensed taxi cabs, an illegal activity. The respondent argued that the Commission was not entitled to an injunction because there was no harm to the public caused by this unlicensed activity. Indeed, respondent argued that he was providing needed cab services. Our Supreme Court rejected this argument, holding that the violation of statute established irreparable harm. *Israel*, 52 A.2d at 321 ("[w]hen the Legislature declares certain conduct to be unlawful it is tantamount in law to calling it injurious to the public. For one to continue such unlawful conduct constitutes irreparable injury.").

Likewise, here, Landowners violated the Private Road Act by installing a swinging gate without court approval. This violation of the statute established irreparable harm. It matters not that Landowners believe that this violation has accomplished something positive that outweighs the concerns cited by the Township's public safety officials. Notably, the injunction itself only lasts until such time as Landowners obtain the leave of court for a swinging gate. We conclude that the trial court did not err in granting a permanent injunction on the Township's motion for judgment on the pleadings.

For these reasons, we affirm the trial court's order.[12]

---

11. Landowners argue that the Township should be estopped from seeking the removal of the gate because the Township assented to the gate's installation. Estoppel is an affirmative defense that must be raised under a separate heading entitled "New Matter." PA. R.C.P. No. 1030. Landowners' Answer does not contain any "New Matter." We agree with the trial court that Landowners' equitable estoppel argument has been waived. PA. R.C.P. No. 1032; *March v. Paradise Mutual Insurance Co.*, 435 Pa.Super. 597, 646 A.2d 1254, 1255–56 (1994) (noting that when defense of estoppel is not raised in new matter, the issue is waived).

12. Because we conclude that Landowners violated the Private Road Act, we do not address whether the installation of the gate violated the SALDO. We also do not address Landowners' argument that the Township effected a *de facto* condemnation of their property when it paved Upper Mt. Blaine Drive. A *de facto* condemnation claim is not an affirmative defense but a stand alone claim. A *de facto* condemnation cannot be presented as a counterclaim but only as a separate petition that conforms to the Eminent Domain Code. *Borough of Walnutport v. Dennis*, 13 A.3d 541, 551 (Pa.Cmwlth.2010) (holding that the trial court "correctly declined to appoint a board of viewers" where landowner raised *de facto* condemnation in a counterclaim). Simply, Landowners' *de facto* condemnation claim was not properly presented to the trial court.

## ORDER

AND NOW, this 30th day of July, 2015, the order of the Washington County Court of Common Pleas dated August 14, 2014, in the above-captioned matter is hereby AFFIRMED.