IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Skytop Meadow Community Association, Inc. | : | |
| | : | |
| v. | : | No. 276 C.D. 2017 |
| | : | Submitted: June 16, 2017 |
| Christopher Paige and Michele Anna Paige, | : | |
| Appellants | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: November 7, 2017

Christopher H. Paige and Michele A. Paige, *pro se*, appeal an order of the Court of Common Pleas of Monroe County (trial court) that granted Skytop Meadow Community Association's (Association) motion for judgment on the pleadings. In doing so, the trial court entered judgment in favor of the Association for the Paiges' overdue homeowners association fees, plus interest and attorney fees. For the reasons that follow, we affirm the trial court and remand for a determination of the amount of monies owed to the Association.

Skytop Meadow is a residential real estate development that has been designated a planned community under the Uniform Planned Community Act, 68 Pa. C.S. §§5101-5414. The Association is a homeowners association responsible for the administration of the community's common facilities. The Paiges are the previous owners of Unit 31, a single-family home they purchased on July 28, 2006.

Complaint, Exhibit A; Reproduced Record at 16b (R.R. __).[1] The deed subjects Unit 31 to the provisions of the Association's Declaration of Covenants, Restrictions, and Easements for Skytop Meadow (Declaration).[2] The Declaration authorizes the Association to impose and collect assessments from property owners to cover the expenses of Skytop Meadow.[3] The Paiges paid the Association's assessments until 2011.

On August 29, 2011, the Paiges filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§701-784, in the United States Bankruptcy Court for the Middle District of Pennsylvania. After the filing, the Paiges discontinued payment of the Association's assessment fees. On June 30, 2016, Unit 31 was sold at a foreclosure sale, nearly five years after the Paiges' bankruptcy filing.

On May 12, 2016, the Association filed a civil action against the Paiges to collect the overdue assessments, plus interest, for the years 2011-2016, and attorney fees. Association's Complaint, ¶27; R.R. 7b.[4] The Paiges filed an answer and new matter, asserting that because their ownership of Unit 31 ceased on August 29, 2011, when they filed their Chapter 7 petition, they were not responsible for the

---

[1] Because of the Paiges' *pro se* status, Skytop Meadow submitted the Reproduced Record in this matter.

[2] Section 5302(a)(1) of the Uniform Planned Community Act grants the Assocation the power to "[a]dopt and amend bylaws and rules and regulations." 68 Pa. C.S. §5302(a)(1).

[3] Section 5302(a)(2) of the Uniform Planned Community Act grants the Association the power to "[a]dopt and amend budgets for revenues, expenditures and reserves and collect assessments for common expenses from unit owners." 68 Pa. C.S. §5302(a)(2).

[4] The Association's six-count complaint asserted the following theories: (1) breach of covenant; (2) unjust enrichment; (3) easement ownership; (4) implied contract; (5) violation of the Uniform Planned Community Act, 68 Pa. C.S. §§5101-5414; and (6) common element ownership and use. At the time of filing, the Association averred the Paiges owed the Association $41,780.96 for overdue assessments, late fees, interest, and attorney fees. Association's Complaint, ¶27.

Association's assessments from that date forward. The Association moved for judgment on the pleadings.

On September 26, 2016, the trial court granted the Association's motion for judgment on the pleadings because the Paiges' answer had admitted nearly all of the Association's factual averments. The only material fact left in dispute was whether the ownership of Unit 31 changed after their Chapter 7 filing. The Paiges asserted that the filing of their Chapter 7 petition on August 29, 2011, made the bankruptcy estate and their mortgage lender, Fannie Mae, the owners of Unit 31. The trial court held that under the Bankruptcy Code, the Paiges retained ownership of Unit 31 until the property was sold at foreclosure on June 30, 2016, and they were responsible for the Association's assessments through that date. Accordingly, the Association was entitled to judgment as a matter of law. The Paiges appealed the trial court's judgment.[5]

On appeal,[6] the Paiges argue, as a threshold matter, that the trial court lacked subject matter jurisdiction to adjudicate the Association's action. As to the merits, the Paiges argue that the trial court erred in entering judgment in favor of the Association because their liability for homeowners association fees ended with the filing of their bankruptcy petition.

---

[5] The Paiges filed their appeal with the Superior Court, which transferred the matter to this Court. The Commonwealth Court, not the Superior Court, has jurisdiction over this appeal because it involves an action by a homeowners association for collection of fees and costs. Section 762(a)(5)(i),(ii) of the Judicial Code, 42 Pa. C.S. §762(a)(5) (i),(ii). *See also* PA. R.A.P. 751; *Stonybrook Condominium Association v. Jocelyn Properties, Inc.*, 862 A.2d 721, 723 n.4 (Pa. Cmwlth. 2004).

[6] In reviewing an order granting a motion for judgment on the pleadings, our scope of review is to determine whether the trial court committed an error of law or whether questions of material fact remain outstanding, such that the case should have gone to the jury. *Peters Township v. Russell*, 121 A.3d 1147, 1149 n.8 (Pa. Cmwlth. 2015). Our standard of review of an order granting or denying a motion for judgment on the pleadings is plenary. *Id.*

We first address the Paiges' challenge to the trial court's subject matter jurisdiction.[7] The Paiges assert that their bankruptcy petition divested the trial court of jurisdiction over the Association's complaint. They contend that the overdue assessments arose from a pre-petition contract and, thus, were subject to the automatic stay provision of Section 362 of the Bankruptcy Code, 11 U.S.C. §362. Section 362 operates to stay the commencement or continuation of any "action or proceeding" that was or could have been commenced against the debtor prior to his filing. It states, in relevant part, as follows:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of –
>
>> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor *that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case* under this title[.]

11 U.S.C. §362(a)(1) (emphasis added). In short, the filing of a bankruptcy petition stays litigation that was instituted, or could have been instituted, pre-petition.

By way of further background, on April 5, 2016, the Association, out of what it called an "abundance of caution," filed a motion for relief from the automatic stay with the bankruptcy court. Association's Motion for Relief at 2; R.R. 386b. In its motion, the Association explained that at the time of the Paiges' Chapter 7 filing, they were current on their assessments to the Association. Because no pre-

---

[7] The Paiges challenge the trial court's jurisdiction for the first time on appeal.

petition sums were owed to the Association, it did not file a proof of claim; likewise, the Association was not listed as a creditor in the Paiges' bankruptcy proceeding. The Association stated that its claim for assessments arose *after* the Chapter 7 filing. On May 10, 2016, the bankruptcy court entered an order denying the Association's motion for relief from the automatic stay. It stated:

> Motion is DENIED inasmuch as the automatic stay does not apply with regard to post[-]petition obligations of the Debtors.

Bankruptcy Court Order, 5/10/2016; R.R. 416b.[8] The bankruptcy court's order was not appealed, and the parties dispute its meaning and effect.

The Paiges assert that the bankruptcy court's denial of relief from the stay renders the current lawsuit "void *ab initio*." *See Maritime Electric Company, Inc. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991) ("Absent relief from the stay, judicial actions and proceedings against the debtor are void *ab initio*."). They maintain that the automatic stay precluded the Association from bringing the current action because the alleged debt arose from a pre-petition contract, *i.e.*, the assessments established in the deed to Unit 31. The Association responds that the Paiges' argument ignores key language of the bankruptcy court's order, namely that the stay "does not apply with regard to post[-]petition obligations." Bankruptcy Court Order, 5/10/2016; R.R. 416b. The Association maintains that the bankruptcy court denied its motion for relief from the stay because, by operation of law, the stay was inapplicable to its post-petition claims. The Association explains that "[i]f no stay was in place, there was no need to grant relief from the stay." Association's Brief at 24.

---

[8] We note that this order was "virtual" in that it was entered directly into the bankruptcy court's database that tracks the Paiges' bankruptcy proceedings. No paper order was issued or docketed.

5

We agree with the Association. The Paiges were current on their assessments until they filed bankruptcy on August 29, 2011, and they do not dispute that the arrears claimed by the Association accrued after that date. Association's Complaint, ¶27; Paiges' Answer, ¶27. Their sole argument is that the alleged debt arose from a pre-petition contract. The Paiges, however, fail to develop this argument or cite any relevant precedent. Additionally, the Paiges' position ignores the bankruptcy court's statement that the Association's motion for relief from the automatic stay was "DENIED inasmuch as the automatic stay does not apply with regard to post[-]petition obligations of the Debtors." Bankruptcy Court Order, 5/10/2016; R.R. 416b. The Paiges' argument ignores the language after the word "denied," and we reject their interpretation of the bankruptcy court's order. The bankruptcy court denied the Association's motion for relief because the Association sought assessments that came due after August 29, 2011, *i.e.*, post-petition obligations that were not part of the bankruptcy proceedings. In sum, the Association was not precluded from bringing the instant action under Section 362 of the Bankruptcy Code and, accordingly, the trial court had subject matter jurisdiction over the action.

Turning to the merits of the appeal, the Paiges assert that the trial court erred in granting the Association's motion for judgment on the pleadings because they have not owned Unit 31 since the day of their Chapter 7 filing and, thus, cannot be liable for the Association's post-petition assessments. The Paiges maintain that since August 29, 2011, the home has been owned by their bankruptcy estate and their mortgage lender.

The Association responds that the Bankruptcy Code allows a homeowners association to collect post-petition fees from debtors so long as the

6

debtor continues to hold "legal, equitable, or possessory ownership interest in [the] unit." 11 U.S.C. §523(a)(16). Here, the Paiges retained legal ownership of the home until it was sold at foreclosure on June 30, 2016. Therefore, they are liable for any assessments from August 29, 2011, through June 30, 2016.

Section 523 of the Bankruptcy Code identifies types of debts that are nondischargeable in bankruptcy. Relevant here is Section 523(a)(16), which specifically excepts from discharge post-petition fees and assessments for membership in a homeowners association. Prior to 2005, post-petition homeowners association fees were nondischargeable only if the debtor occupied or rented the property. In 2005, Section 523(a)(16) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act to broaden the exception to discharge for homeowners association fees. Section 523(a)(16) now states, in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (16) for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, *for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit*, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case[.]

11 U.S.C. §523(a)(16) (emphasis added). The legislative history of the 2005 amendment explains:

7

Section 412 [of the Bankruptcy Abuse Prevention and Consumer Act] amends section 523(a)(16) of the Bankruptcy Code to broaden the protections accorded to community associations with respect to fees or assessments arising from the debtor's interest in a condominium, cooperative, or homeowners' association. Irrespective of whether or not the debtor physically occupies such property, fees or assessments that accrue during the period the debtor or the trustee has a legal, equitable, or possessory ownership interest in such property are nondischargeable.

H.R. REP. No. 109-31, at 88 (2005).

The trial court held that the plain language of Section 523(a)(16) defeated the Paiges' argument that their bankruptcy estate and lender owned the property upon the filing of their bankruptcy petition. The trial court explained as follows:

[Section 523(a)(16)] explains that there is no discharge in bankruptcy of fees and assessments made due after the filing of a petition and payable to a homeowners association "for as long as *the debtor or the trustee* has a legal, equitable, or possessory ownership interest in such unit" *See* 11 U.S.C. §523(a)(16), (emphasis added). A plain language reading of the statute would show a debtor is still liable for homeowner's association fees even after filing for bankruptcy and the debtor's assets being placed in trust.

Trial Court Op., 9/26/2016, at 5.

We agree with the trial court. Section 523(a)(16) explicitly makes homeowners association fees nondischargeable so long as the debtor or the trustee, *i.e.*, the debtor's bankruptcy estate, holds a legal, equitable, or possessory interest in the property. Although no Pennsylvania court has interpreted Section 523(a)(16) since the 2005 amendment, precedent from other courts supports the trial court's conclusion that the Paiges retained legal ownership of Unit 31 after they filed their bankruptcy petition.

8

For example, in *In re Heck*, 2011 WL 133015 (Bankr. N.D. Cal., No. 09-31512, January 14, 2011), the debtors sought to reopen their bankruptcy case in order to enforce the bankruptcy court's discharge order against their homeowners association. The debtors, who conceded that the association's fees were post-petition debts, sought to compel their mortgagee to take legal title to the subject property as of the date of their bankruptcy filing and to assume financial responsibility for the property. In short, the debtors argued that their mortgagee should be responsible for the post-petition homeowners association dues. The bankruptcy court denied the debtors' claims, holding that Section 523(a)(16) of the Bankruptcy Code did not bar the homeowners association's collection efforts. This was because the debtors continued to hold a legal interest until foreclosure.

The same result was reached in *In re Langenderfer*, 2012 WL 1414301 (Bankr. N.D. Ohio, No. 10-31741, April 23, 2012), where the bankruptcy court held that the debtor retained a legal ownership interest in a condominium unit until it was sold at a sheriff's sale. Although the debtor had abandoned and moved out of the condominium unit, she retained legal title. The court explained that

> [u]nder the amended version of the statute, post-petition condominium association fees that accrued while [debtor] still had legal title to the property are not dischargeable. The fact that [the] [d]ebtor may have intended to surrender the condominium unit or the fact that she has actually vacated the premises does not alter her status as the holder of legal title to the condominium unit.

*Id.* at *2 (internal citations omitted).

9

Here, the Paiges retained legal ownership of Unit 31 until June 30, 2016, the date the unit was sold at a foreclosure sale.[9] What is more, the Paiges admit they retained a possessory interest in Unit 31 after their Chapter 7 filing. In their brief they concede that "we did – at times – live in the home at issue…." Paiges' Brief at 24. Post-petition homeowners association fees are nondischargeable if the debtor retains legal, equitable, *or* possessory interest in the unit. 11 U.S.C. §523(a)(16). Because the Paiges retained a possessory and legal interest in Unit 31 from the date of their Chapter 7 petition, August 29, 2011, through the foreclosure sale on June 30, 2016, the Association's assessments during this period were nondischargeable and the Paiges remain liable for them.

The Paiges raise additional issues which we summarize as follows. First, the Paiges assert that because the Association did not initiate its civil action to collect the unpaid assessments until five years after payments ceased, it is reasonable to infer that the Paiges had a forbearance agreement with the Association, or that the Association "gifted" the Paiges five years of its services. The Paiges argue that, under either theory, the Association should have no expectation of repayment. The Paiges also assert that this case is moot because they will be financially unable to satisfy any judgment against them.

---

[9] It has been observed that in enacting the 2005 amendment to Section 523(a)(16), "Congress did not foresee the coming economic storm and the real estate foreclosure crisis, or the toll this new provision would take on the fresh start of many individuals…." *Langenderfer*, 2012 WL 1414301 at *2, n.1; *see also In re Pigg*, 453 B.R. 728, 733 (Bankr. M.D. Tenn. 2011) ("With the real estate collapse, lenders, who otherwise have the right to do so, are choosing not to foreclose on their collateral leaving homeowners in limbo…. If the lender never forecloses, that homeowner's liability for the [Homeowners' Assocation] fees continues in perpetuity."). While this Court is sympathetic to the Paiges' circumstances, it has no alternative but to interpret and enforce the statute as written by Congress.

The argument portion of a brief must be developed with pertinent discussion of the issues, including citations to relevant authority. PA. R.A.P. 2119(a). When parties fail to satisfy this requirement, the Court is "neither obliged, nor even particularly equipped, to develop an argument for [them]." *In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013). Such is the case here. The argument portion of the Paiges' brief poses a litany of rhetorical and hypothetical questions, along with undeveloped arguments that invite this Court to rule in their favor out of sympathy for their financial situation. The Paiges' discussion of the remaining arguments identified above is so inadequate that this Court cannot conduct meaningful appellate review. Accordingly, we find those issues are waived.

For the foregoing reasons, we affirm the trial court's order granting the Association's motion for judgment on the pleadings and remand to the trial court for a determination of the damages owed to the Association.

_____
MARY HANNAH LEAVITT, President Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Skytop Meadow Community : 
Association, Inc. : 
 : 
          v. :   No. 276 C.D. 2017
 : 
Christopher Paige and Michele : 
Anna Page, : 
              Appellants : 

# **O R D E R**

AND NOW, this 7th day of November, 2017, the order of the Court of Common Pleas of Monroe County (trial court) dated September 26, 2016, in the above-captioned matter is AFFIRMED. The matter is REMANDED to the trial court to determine the amount of damages owed by Appellants to Appellee.

      Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Skytop Meadow Community       :
Association, Inc.                 :
                              :
       v.                :
                              :
Christopher Paige and        :
Michele Anna Paige,         :  No. 276 C.D. 2017
           Appellants     :  Submitted: June 16, 2017

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE            FILED:  November 7, 2017

      In its brief, Skytop Meadow Community Association, Inc. (Appellee) states that "[i]n an abundance of caution, [it] filed a Motion for Relief *from the Stay* in the United States Bankruptcy Court ..."  (Appellee's Brief at 8) (emphasis added). The order of the Bankruptcy Court addressing this motion specifically states that it was "DENIED..."  (Reproduced Record at 416B.)  Accompanying this order was a somewhat cryptic reference to the "stay" which the Majority interprets to mean that no such automatic "stay" ever existed.  If that were the case, then no motion for relief would have been either necessary or appropriate.  In fact, it would have been a nullity which the Bankruptcy Court should have "dismissed," not "denied."  If the order needs clarification, it should come from the Bankruptcy Court itself, not us.  On the

record before us, we intrude on that Court's territory by attempting to discern what it intended.  As such, I must dissent.

_____

JOSEPH M. COSGROVE, Judge